IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS GRACE<br>90 Autumn Drive<br>Newtown, PA 18940<br><br>      Plaintiff<br> v.<br><br>NATIONAL PHILANTHROPIC TRUST,<br>165 Township Line Road, Suite 150<br>Jenkintown, PA 19046<br><br>      Defendant | CIVIL ACTION<br><br>DOCKET NO.:<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Thomas Grace (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Defendant for violations of the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA" - 43 Pa.C.S. §§ 951 *et. seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the ADEA. This Court may also assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same nucleus of operative facts as his federal law claims.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC and by filing the instant lawsuit after more than 1 year has elapsed from his filings with said Agencies.

## **PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. National Philanthropic Trust is a Pennsylvania non-profit corporation with a registered address at 165 Township Line Rd., Suite 150, Jenkintown PA 19046.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 59-year-old male.

12. Plaintiff's has a strong professional background in the operations, technical and client service(s) aspects of the financial services industry, including 10 years at Vanguard as a senior officer.

13. Defendant is a non-profit company, founded in 1996, that provides administrative services to high net worth charitable donors, foundations and financial firms through donor advised funds and other tax-favored philanthropic vehicles.

14. Plaintiff began working for Defendant on a consulting basis in 2003. At the time, Defendant had approximately 10 employees, few of whom had any substantial financial services or donor advised fund experience.

15. As of the timeframe in which Plaintiff commenced working for Defendant as a consultant, one Eileen Heisman was employed with Defendant as its Chief Executive Officer ("CEO"), and within a few weeks - in or about January of 2004 - Heisman hired Plaintiff as the senior Vice President of Operations and Technology.

16. Plaintiff's immediate challenge when hired, and one that threatened the Defendant's viability, was to replace the existing technology system, the provider of which had given notice that it was going out of business imminently if the company were not purchased.

17. Plaintiff promptly found and implemented a new technology record-keeping solution for administration of accounts. In conjunction with the new technology system, Plaintiff was able to change the fee structure under which Defendant did business with financial institutions. These changes created a viable business model. Defendant went from having difficulty making its payroll to now earning a surplus in excess of $1 million per year, with appropriate reserves and insurance.

18. Plaintiff's dedication to Defendant's success in his first several years was also reflected in him declining merit-based pay incentives during the year and annually in an effort to ensure that Defendant was as financially stable as possible.

19. After being employed for approximately two (2) years with Defendant, Heisman expressed tremendous gratitude to Plaintiff for his successes and accomplishments within Defendant and elevated Plaintiff to the position of Chief Operating Officer ("COO").

20. As COO, Plaintiff's responsibilities included overseeing and improving the technological, financial, operational, sales and client service aspects of the company, all of which are crucial to the company's overall service success. In addition, Plaintiff negotiated (with legal support) the terms of financial relationships with major partner institutions, hired and fired staff, and assured that Plaintiff provided excellent service to its donors and other clients.

21. In his role overseeing staff, Plaintiff carefully revaluated and ultimately hired the CPA who has since been promoted to Vice President of Finance, and he hired, mentored and supervised many long-term employees, including among others the Assistant Vice President of Donor Services, the Assistant Vice President of Supporting Organizations, and the Vice President of Sales.

22. Under Plaintiff's direction, Defendant developed a 3-year strategic plan. In addition Plaintiff oversaw a major overhaul of the financial reconciliation process. This resulted in greatly increased efficiencies in staffing, speed and accuracy of daily, monthly and quarterly reconciliations and thereby saved Plaintiff considerable expense. When Plaintiff started at Defendant, the company administered approximately $600 million in donor advised funds, and in the years in which he oversaw the business, the company grew to approximately $1.6 billion in donor advised funds.

23. In each of the years that Plaintiff worked at Defendant, he received a performance review prepared by Heisman (whom he reported to during his employment). The reviews consistently stated that he did excellent work (among other positive feedback), and he consistently received overall scores of 5 on a scale of 1-5 (the highest scores that can be achieved on the particular scale utilized by Defendant).

24. In September of 2010, Think Advisor published an article for national dissemination about Defendant and Heisman provided specific commentary about Defendant's success, stating in pertinent part:

> She pointed in particular to Tom Grace, [Defendant's] chief operations officer whom she brought on board seven years ago. "If it weren't for his ability to understand operations, I don't think we would have gotten where we are," she said." "I said if we're going to be able to work with big financial services companies, we're going to need to able to scale. I know the charitable and DAF side like the back of my hand, but the scaling side was beyond me. Tom's really a genius at that."

25. Plaintiff's last performance review was less than 2 months before Heisman, suddenly and without warning, terminated Plaintiff's employment on or about April 21, 2013. In that review, Plaintiff also received an overall score of 5 on a scale of 1-5, and positive comments. In conjunction with Plaintiff's last evaluation (in the months preceding his abrupt termination), Plaintiff also received the maximum budgeted bonus and a substantial raise.

26. Plaintiff's successes were so apparent to the company that Plaintiff was given an additional pay increase of $40,000.00 and a "stay in place bonus" of $40,000.00 shortly before Plaintiff's termination in addition to standard evaluation-related bonus incentives as aforesaid.

27. After more than nine years of stellar documented performance as an operations executive, including Chief Operating Officer, at Defendant, and only weeks after giving Plaintiff the $40,000 "stay in place bonus" and $40,000 raise in salary, Heisman summarily terminated Plaintiff without explanation on April 21, 2013.

## PLAINTIFF'S TERMINATION WAS PRETEXTUAL AND PREMISED SOLELY UPON HIS AGE

28. In or about May of 2012, Plaintiff suffered a stroke. Plaintiff did not miss any meaningful time from work but kept Defendant's management, inclusive of Heisman, apprised of his health and was honest at all times about any complications arising out of the stroke. The period of time between Plaintiff's stroke and his termination from employment was approximately 10-11 months. During Plaintiff's last approximate 10-11 months of employment, Defendants' management began treating Plaintiff differently, discriminatorily, and with expressed purpose of facilitating a change in Plaintiff's then position due to his age.

29. Through the end of 2012 and through early 2013, Plaintiff was directed to prepare and engage in discussions of succession planning (in other words, to provide suggested short and long-term alternatives as to who could replace him).

30. Heisman made references to Plaintiff's age directly to Plaintiff and specifically suggested replacing Plaintiff with "younger" management.

31. Plaintiff was abruptly terminated without meaningful explanation on or about April 21, 2013 via telephone (only to later learn post termination it was for alleged performance reasons) wherein Heisman stated his services were no longer needed with an attorney on the

same telephone line. Plaintiff's termination was pretextual and premised upon his age for many reasons that include but are not limited to:

A. He was employed for approximately 11 years for Defendant, and he was never once given any progressive discipline (verbal or written) or any informal notice of any purported concern with his actions or performance within Defendant;

B. Not only was he never once warned of any concern with his performance within Defendant, Plaintiff also received annual evaluations identifying he was in essence an outstanding employee of Defendant with continual positive feedback;

C. He was evaluated within the approximate 2 months preceding his termination identifying positive feedback and given an overall high performance rating (along with an annual merit-based pay increase);

D. In the weeks preceding his termination, Plaintiff was given a very substantial additional and discretionary performance-based pay increase and bonus (separate and apart from his prior evaluation-related increase(s));

E. Prior to and shortly before his termination, Heisman specifically referenced obtaining "younger" replacements for Plaintiff; and

F. Younger executives other than Plaintiff who had actually had serious performance concerns were warned and/or not terminated from Defendant unlike Plaintiff who was given no warning. By way of example, one Andrew Hastings - a Chief Development Officer for Defendant - repeatedly exposed Defendant to significant liabilities and made errors such that he had 1-on-1 meetings for errors with management, was given pay decreases, had bonuses

7

withheld, was admonished at varying times, and was a topic of discussion for termination on multiple occasions (yet remains employed); and

G. Plaintiff was in fact functionally replaced following his termination for purported performance concerns.

32. Defendant, through its management, designed and orchestrated a plan to terminate Plaintiff based upon his age during Plaintiff's last year of employment because of Plaintiff's advanced age and perceptions of him deteriorating due to same.

### First Cause of Action
### Violations of the Age Discrimination in Employment Act ("ADEA")
### (Wrongful Termination: Age Discrimination)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff was terminated from Defendant because of his advanced age.

35. These actions as aforesaid constitute violations of the ADEA.

### Second Cause of Action
### Violations of the Pennsylvania Human Relation Act ("PHRA")
### (Wrongful Termination: Age Discrimination)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff was terminated from Defendant because of his advanced age.

38. These actions as aforesaid constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering, and humiliation caused by Defendants' actions (as permitted by applicable law);

C. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: August 15, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Thomas Grace | : | CIVIL ACTION |
| v. | : | |
| National Philanthropic Trust | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| 8/15/2014 | Ari R. Karpf | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 90 Autumn Drive, Newtown, PA 18940

Address of Defendant: 165 Township Line Road, Suite 150, Jenkintown, PA 19046

Place of Accident, Incident or Transaction: Defendant's place of business
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Ari R. Karpf, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 8/15/2014   _____ Attorney-at-Law   ARK2484   Attorney I.D.# 91538

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/15/2014   _____ Attorney-at-Law   ARK2484   Attorney I.D.# 91538

CIV. 609 (5/2012)

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GRACE, THOMAS

(b) County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, PC, 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020, (215) 639-0801, akarpf@karpf-law.com

## DEFENDANTS

NATIONAL PHILANTHROPIC TRUST

County of Residence of First Listed Defendant  Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Age Discrimination in Employment Act "ADEA" (29 USC 621)
Brief description of cause:
Violations of the ADEA and the Pennsylvania Human Relations Act.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____